UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


SAMILLE A. MINOR                                                    PLAINTIFF

VERSUS                                      CIVIL ACTION NO. 1:13CV17-HSO-RHW

MICHAEL J. ASTRUE,
Commissioner of SSA                                                DEFENDANT


**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Samille A. Minor's [1] Complaint and [9]

Memorandum in Support to Reverse the decision of the Commissioner of the Social Security

Administration;  and Defendant's [7] Answer and [10] Memorandum in Support to Affirm the

Decision of the Commissioner.  Plaintiff argues that the Commissioner's decision should be

reversed because (1) the administrative law judge (ALJ) erred as a matter of law in applying an

incorrect standard of severity with respect to Plaintiff's knee impairment at step two and that this

error resulted in prejudice to Plaintiff's determined Residual Functional Capacity (RFC); and (2)

the ALJ erred as a matter of law in failing to fulfill his duty to fully and fairly develop the record.

**Factual Background**

On June 8, 2010, Plaintiff filed for disability insurance benefits and supplemental security

income alleging an onset of disability beginning May 12, 2010.  *See* doc. [8] at 149-68.  She

alleged that she became unable to work due to "pinched nerve back and neck."  *Id.* at 153.  At the

time of alleged onset, Plaintiff was 54 years old, and at the date of the ALJ hearing, she was 56

years old.  She has a high school education and past relevant work experience as a cashier, cook,

truck driver, waitress, store manager, food processing wrapper, and bus driver.

Plaintiff requested a hearing before an ALJ, which was conducted on September 7, 2011. *Id.* at 28. On December 13, 2011, the ALJ issued a decision denying benefits. *Id.* at 16-23. In his written decision, the ALJ determined that Plaintiff had severe impairments of degenerative disk disease and carpel tunnel syndrome but that Plaintiff's alleged knee impairment was not severe. *Id.* at 18-19. In making the RFC determination, the ALJ relied on an RFC assessment from Dr. Gibson. *Id.* at 19. Dr. Gibson completed the assessment on September 2, 2010; thus, the assessment did not consider certain medical evidence between that time and the time of the ALJ opinion (December 13, 2011). *Id.* at 272-79. Dr. James Griffin affirmed Dr. Gibson's assessment on December 20, 2010. *Id.* at 295.

Based on his evaluation of the medical record, the ALJ concluded that Plaintiff retained the RFC to perform a reduced range of light work. *Id.* at 20-22. Specifically, he found that she could perform light work except that she cannot climb ladders, ropes, or scaffolds; she can only occasionally stoop, crouch, or crawl; and she is unable to operate high impact or high torque tools. *Id.* Based on the testimony of a vocational expert, the ALJ concluded that given Plaintiff's limitations, she could perform her past relevant work as a cashier and waitress. *Id.* at 23. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.* Plaintiff pursued an appeal with the Appeals Council. The Appeals Council issued a letter denying Plaintiff's request for review. *Id.* at 5. Plaintiff then filed the instant lawsuit.

## Law and Analysis

Federal district courts review the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.

1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of

the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id.*

### (1) Legal Standard of Severity

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ used the improper standard of severity at step 2 of the disability determination analysis. Specifically, Plaintiff urges this Court to adopt a strict interpretation of the Fifth Circuit's standard of severity articulated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  In support of her argument, Plaintiff points to *Acosta v. Astrue*, 865 F.Supp.2d 767 (W.D. Tex. 2012), where the district court for the Western District of Texas acknowledged two different interpretations of the *Stone* standard for severity.  Plaintiff requests this court to adopt a standard that "provides no allowance for a minimal interference on a claimant's ability to work."  Doc.[9] at 11.  Plaintiff cites two other cases from the Texas district courts to support this narrow interpretation of the *Stone* standard, both of which are cited in *Acosta*.  *See Padalecki v. Astrue*, 688 F. Supp. 2d 576 (W.D. Tex. 2009); *Scroggins v. Astrue*, 598 F. Supp. 2d 800 (N.D. Tex. 2009).

In *Stone*, the Fifth Circuit held that an impairment may be determined not severe under 20

C.F.R. § 404.1520(c) "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."  *Stone*, 752 F.2d at 1101.  Furthermore, the Court stated, "we will assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement *unless* the correct standard is set forth by reference to this opinion . . . ."  *Id.* at 1106.  In this case, when discussing the knee impairment at step 2, the ALJ cited to *Stone* and found that "as [Minor] only had mild swelling, [the knee impairment] does not result in more than minimum limitations on the claimant's ability to perform work related activities."  Plaintiff argues that the ALJ's finding contravenes the standard articulated in *Stone* because the ALJ found the knee impairment to have "minimum limitations" on her ability to work.

In *Acosta*, the case cited to by Plaintiff, the district court concluded that the Fifth Circuit has adopted the more liberal approach on this seemingly divided issue.  865 F.Supp.2d at 781-83. However, in a decision out of the Southern District of Mississippi, the district court drew a fine distinction between conditions (1) having a minimal effect on the *individual* and (2) those having a minimal effect on the *individual's ability to work*.  *See Ireland v. Colvin*, 2013 WL 4804842, at *5 (S.D. Miss. 2013).  The district court in *Ireland* concluded that a medically determinable impairment having "any effect on the ability to work be characterized as severe."  *Id.* at *5.  By contrast, the Fifth Circuit has indicated that a non-severity finding would not constitute error even if the impairment were a "slight abnormality of *minimal effect on ability to work*."  *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000)(emphasis added).  The Fifth Circuit further endorsed this approach in a 2010 unpublished opinion when it stated that an impairment is "not severe if it is a slight abnormality or combination of slight abnormalities that has *no more than a minimal effect*

5

on the claimant's ability to do basic *work* activities." *Brunson v. Astrue*, 387 Fed. App'x 459, 461, 2010 WL 2802372, *1 (5th Cir. 2010)(unpublished)(emphasis added). In other words, the standard articulated by the ALJ in the instant case conforms closely to that used by the Fifth Circuit in both published and unpublished decisions; therefore, the undersigned does not recommend reversal on this basis.

In a separate but related argument, Plaintiff argues that substantial evidence of record shows that she suffers from a functionally limiting knee impairment and that the ALJ's conclusion otherwise is contrary to the evidence of record. The question for this Court is not whether substantial evidence supports the Plaintiff's claim of a severe knee impairment. Rather, the appropriate question is whether there is substantial evidence to support the ALJ's finding that the knee impairment was not severe. To the extent that there may be conflicts in the evidence, these are for the Commissioner to resolve, not the Court. *See Brown*, 192 F.3d at 496.

In this case, the ALJ discussed the medical history concerning Plaintiff's knee. Doc. [8] at 19. He noted that the records do not contain objective medical imaging of the knee, such as positive x-rays or MRI, to substantiate her claims of disabling pain. *Id.* The ALJ found that the only indication of left knee problems comes from a doctor visit on August 11, 2010, where the examination revealed only "mild swelling". *Id.* The ALJ further noted that Plaintiff received an injection in the knee at that visit but subsequent medical records show that she ambulated with normal gait and no diminished range of motion. *Id.* Based on the foregoing, the undersigned finds that there is substantial evidence to support the ALJ's conclusion of non-severity. Plaintiff points to additional medical records, including x-ray results from September 8, 2011 that

revealed mild degenerative joint disease.[1]  *See* Doc. [9] at 12-13.  At most, however, Plaintiff has demonstrated a conflict in the evidence rather than an absence of substantial evidence supporting the ALJ's conclusion.  It is not the function of this Court to re-weigh the evidence or evaluate conflicts in the evidence.  *See Brown*, 192 F.3d at 496; *Johnson*, 864 F.2d at 343.

The undersigned also concludes that any error in the ALJ's finding of non-severity would be harmless.  The Fifth Circuit has held that where the case does not depend upon a conclusion of "non-severity" at step 2, and the ALJ finds that a claimant is not disabled at a later step in the sequential evaluation analysis, any error is harmless.  *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)(stating that there is no ground to remand a case in these circumstances); *Jones v. Astrue*, 851 F.Supp.2d 1010, 1018 (N.D. Tex. 2012).  In this case, the ALJ found Plaintiff not disabled at step 5.  Plaintiff offers the conclusory argument that the ALJ's failure to recognize the knee impairment as severe "resulted in prejudice" because "the assigned RFC does not reflect any appropriate limitations for this impairment."  Doc. [9] at 13.  If the knee impairment had been found severe, Plaintiff argues, again in conclusory fashion, that "it is likely, at a minimum, Ms. Minor would be limited to performing no greater than the full range of sedentary exertional level work".  *Id.*  Plaintiff's unsupported assertions of prejudice are an insufficient basis to reverse the decision of the Commissioner.

### (2) ALJ's Duty to Develop the Record

Plaintiff next argues that the ALJ did not properly develop the record and was required either to send Plaintiff to a consultative examination or re-contact her examining doctors to

---

[1] The medical record does contain x-ray results from September 8, 2011, indicating mild, degenerative joint disease.  Doc. [8] at 396.  In apparent reference to this x-ray, the ALJ noted that "MRIs of the left knee. . . revealed only mild degenerative changes."  *Id.* at 22.

obtain an updated RFC assessment.  Plaintiff further asserts that the ALJ improperly evaluated medical evidence when assigning functional limitations.

In determining Plaintiff's RFC, the ALJ gave significant weight to the assessment of Dr. Gibson dated September 2, 2010.  Doc. [8] at 22, 272-79.  At the time of Dr. Gibson's assessment, the primary diagnosis was degenerative disease in the spine.  *Id.* at 272.  As noted by Dr. Gibson, Plaintiff complained of arm numbness but displayed normal joint movement and wrist strength.  *Id.* at 274.  Plaintiff argues that Dr. Gibson's assessment was completed without the benefit of significant later medical evidence.  Specifically, Plaintiff points to later medical evidence concerning her degenerative disc disease and new medical evidence concerning her knee condition and carpel tunnel syndrome (CTS).  This evidence came into the record after Dr. Gibson completed the RFC assessment in September 2010.  As a result, Plaintiff argues that no physician has completed an RFC assessment based on all of the relevant medical evidence.

It is the ALJ's responsibility to make a determination of a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 558 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546 (1994)).  However, the ALJ's determination must be supported by substantial evidence in the record.  *Id.*  "[T]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits.  If the ALJ does not satisfy his duty, his decision is not substantially justified."  *Id.* at 557 (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).  Plaintiff must show prejudice, which is "established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence *might* have led to a different decision."  *Id.* at 557 n.22.  In a similar context, the district court for the Southern District of Texas held that because the medical record was not complete at the time of the physician's RFC

assessment, the ALJ did not fully and fairly develop the record; the ALJ was instructed to have a physician review all relevant medical records for the RFC evaluation. *Johnson v. Barnhart*, 285 F. Supp. 2d 899, 912 (S.D. Tex. 2003); *see also Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. Ill. 2000)(holding that the ALJ should rely on a physician as opposed to playing doctor). However, the ALJ is permitted to "make common-sense judgments about functional capacity based on medical findings, as long as [the ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils v. Sect'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990); *see also Manso-Pizarro v. Sect'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person").

The ALJ did not err in his evaluation of Plaintiff's limitations as they relate to medical records considered by the ALJ subsequent to Dr. Gibson's RFC assessment. As discussed previously, the ALJ concluded that Plaintiff's knee impairment was not severe, and the undersigned found this conclusion to be supported by substantial evidence. In assessing Plaintiff's knee condition, the ALJ considered subsequent medical evidence. On August 11, 2010, Dr. Amanda Smith examined Plaintiff for knee pain.[2] Doc. [8] at 262-64. Dr. Smith noted clinical findings of mild swelling and crepitus in the left knee joint and reported decreased mobility due to pain. *Id.* at 263. Plaintiff received an injection in her left knee on that same day. *Id.* The ALJ observed that after the September 2010 injection in the knee, subsequent medical

---

[2] Although these records pre-date Dr. Gibson's assessment, Plaintiff asserts, and the Commissioner does not dispute, that the records of the August 11, 2010, examination and treatment were not part of the record considered by Dr. Gibson when he made his RFC evaluation. Doc. [9] at 15.

9

records show that Plaintiff ambulated with normal gait and there was no diminished range of motion. *See e.g. id.* at 359 (7/27/2011 normal gait) & 363 (3/30/2011 same).

On January 12, 2011 Dr. Gilliam Hicks noted in the medical records that Plaintiff complained of bilateral knee pain. *Id.* at 367. According to Dr. Hicks, Plaintiff displayed a slow, deliberate gait; however, he found no joint tenderness. *Id.* X-rays of both knees were performed on September 8, 2011, approximately one year after Dr. Gibson's RFC evaluation. *Id.* at 396. The right knee x-ray demonstrated mild degenerative changes; but there was no evidence of joint effusion, acute osseous, or articular abnormality. *Id.* The left knee x-ray demonstrated mild degenerative changes, joint narrowing, and increased soft tissue density indicating joint effusion, but no acute osseous or articular abnormality. *Id.* Dr. Elbert Frazier Ward examined the x-ray results and noted "mild" conditions but did not indicate any limitations, restrictions, or treatment plan with respect to the knees. *Id.* The ALJ also considered this evidence and noted that the imaging of Plaintiff's left knee "revealed only mild degenerative changes." *Id.* at 22.

The subsequent medical evidence cited by Plaintiff does not indicate any new or additional limitations caused by Plaintiff's knee condition. The ALJ noted that at most Plaintiff presented on August 11, 2010 with "mild swelling" but that subsequent medical evidence did not demonstrate any limitations as to her work-related activities. *Id.* at 19. As discussed above, a review of the later medical evidence supports the ALJ's finding that these subsequent records do not present evidence of more than minimal limitations on Plaintiff. Thus the ALJ was under no obligation to obtain a follow up examination or report from a treating source.

As for the degenerative disc disease, Dr. Gibson's RFC assessment fully considered this impairment. The Plaintiff does not point to any subsequent evidence of record that would alter

10

Dr. Gibson's September 2010 assessment. Thus, with respect to Plaintiff's limitations, the ALJ developed the facts fully and fairly as they related to Plaintiff's degenerative disc impairment.

With respect to Plaintiff's CTS, the ALJ considered Plaintiff's condition and limited her to performing light work and found that she is unable to operate high impact or high torque tools. Doc. [8] at 22. In his RFC evaluation, Dr. Gibson acknowledged that Plaintiff complained of arm numbness and weakness, but noted grip strength of 3/5 and triceps strength of 4/5. Dr. Gibson also noted that the remainder of the exam was normal including wrist strength and range of motion. Doc. [8] at 274. Dr. Griffin's "Medical Consultant Review" also considered Plaintiff's complaints of hand and arm problems but concluded that Dr. Gibson's RFC "should stand". *Id.* at 295. Finally, the ALJ acknowledged the September 8, 2011 report from The University Hospitals and Clinics, which "referred [claimant] to pain management for specialized treatment for her wrist." *Id.* at 21. However, the ALJ found that "there is no indication that she followed through on this treatment plan." *Id.* Based on the reports of Dr. Gibson and Dr. Griffin, there is substantial evidence in the record to support the limitations assigned by the ALJ due to Plaintiff's CTS. Plaintiff fails to identify any subsequent medical records that would call into question the ALJ's conclusions with respect to CTS such that updated medical source statements should be obtained.

## RECOMMENDATION

The undersigned recommends that Plaintiff's request to remand the case be DENIED; and that the Commissioner's request to affirm the Commissioner's decision be GRANTED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this

11

Recommendation must, within fourteen (14) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. A party filing objections must identify specifically those findings, conclusions, and recommendations to which objection are being made; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court.  A party who fails to file written objections to the proposed findings, conclusions, and Recommendation within fourteen (14) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED, this the 24th day of January, 2014.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE

12